IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raymond Shelton,<br><br>　　　　　　Petitioner,<br><br>v.<br><br>Craig Apker, Warden,<br><br>　　　　　　Respondent. | No. cv-11-444-TUC-FRZ (CRP)<br><br>**REPORT AND RECOMMENDATION** |

　　　Pending before the Court is a Petition of Habeas Corpus (Habeas Petition) brought pursuant to Title 28, United States Code, Section 2241. (Doc. 1). Raymond Shelton (Petitioner) filed this Habeas Petition while confined in the Federal Correctional Institution in Tucson, Arizona (FCI-Tucson). (Doc. 1). Petitioner challenges the discipline hearing officer's finding that he engaged in fighting with another inmate, and seeks restoration of his lost good time credit. For the reasons below, the Magistrate Judge recommends that the District Court deny the Habeas Petition.

**Factual and Procedural Background**

　　　Petitioner is currently serving a 168-month sentence for conspiracy to distribute narcotics and weapons-related charges. (Doc. 12-1, pp. 9-10).[1] Petitioner's projected

---

[1] The Magistrate Judge cites to the pagination of the Court's CM/ECF case management system.

release date if he earns all good conduct time is February 5, 2014. (Doc. 12-1, p. 10).

In the Habeas Petition, Petitioner seeks restoration of 27 days good time credit that he lost because of his involvement in a fight with another inmate. (Doc. 1, p. 8). Petitioner claims prison staff made false statements in the Incident Report and that his due process and his equal protection rights were denied during the disciplinary hearing. (Doc. 1, p. 2). The altercation between Petitioner and another inmate, Orelus Orrelien, occurred at approximately 2:00 p.m. on June 9, 2009, outside of Petitioner's cell. (Doc. 1, p. 13).

According to the Incident Report, Petitioner told the investigating officer that the fight began as a verbal argument. (Doc. 12-2, pp. 43-44). Petitioner believed the other inmate snitched on him about a scratch on the unit floor. (*Id*.). The verbal argument escalated to a physical fight. (*Id*.). The other inmate sustained multiple injuries. (*Id*.). A medical examination of Petitioner shortly after the fight showed only a small superficial abrasion on his left scapular area. (Doc. 12-2, pp. 49-50). The Incident Report also reflects that Petitioner told the investigating officer that he "did not admit to anything at the time of this incident" as he was "with [his] counselor" at that time. (*Id*.).

Prior to the disciplinary hearing, Petitioner was advised of his rights. (Doc. 12-2, p. 54). Petitioner requested the testimony of two inmates as witnesses. (Doc. 12-2, p. 55). The disciplinary hearing was conducted on August 13, 2009. (Doc. 12-2, p. 39). The disciplinary hearing officer ("DHO") denied Petitioner's request for the witnesses because they were housed at other facilities. (Doc. 12-2, pp. 40). The DHO did consider written statements submitted by the witnesses. One witness stated he did not observe Petitioner and the other inmate fighting. (Doc. 12-2, pp. 41, 57). The other witness stated he observed Petitioner and the other inmate engaged in a verbal argument that escalated to a physical fight when the other inmate told Petitioner that he would hit Petitioner with a mop. (Doc. 12-2, pp. 40, 56). After Petitioner was read a description of the incident during the disciplinary hearing, he stated the other inmate "had a knife and mop handle. I just defended myself." (Doc. 12-2, pp. 39-40). During the disciplinary hearing, Petitioner

did not raise any concerns with the discipline process to that point. (Doc. 12-2, p. 39).

After reviewing all the evidence, the DHO found the greater weight of the evidence supported finding Petitioner engaged in fighting with another inmate. (Doc. 12-2, pp. 40-41). The DHO noted the photographs and medical report showing the other inmate sustained injuries from the fight, while evidence showed no injuries to Petitioner. (*Id*.). The DHO also relied on Petitioner's own statements from the Incident Report and during the disciplinary hearing that he engaged in fighting. (*Id*.). The DHO found Petitioner's assertion that he did not fight not credible given multiple inconsistent statements Petitioner made during the course of investigation and the disciplinary hearing. (Doc. 12-2, p. 41). The DHO further noted that even one of Petitioner's requested witnesses stated Petitioner engaged in fighting. (*Id*.). The DHO sanctioned Petitioner with the loss of 27 days good conduct time, 15 days of disciplinary segregation, and 3 months loss of commissary. (Doc. 12-2, p. 41).

In his Habeas Petition, Petitioner claims that his due process rights were violated because the investigating officer included false facts in the Incident Report, specifically Petitioner's statements in the Incident Report admitting he was involved in the fight. (Doc. 1, p. 6). Petitioner also argues that he was denied the photographs that were taken of his injuries and that the Incident Report was incorrect in noting he did not sustain any injuries. *Id.* Lastly, Petitioner argues that his due process and equal protection rights were violated when the charges against the other inmate involved in the incident were dismissed. (Doc. 1, p. 7). The Government contests the Habeas Petition, arguing (1) Petitioner failed to exhaust all available administrative remedies; and (2) the DHO's decision is supported by "some evidence." (Doc. 12, pp. 8-13). The Government also contests any claims made by Petitioner of discrimination and equal protection violations as not cognizable under federal habeas review. Because the DHO's determination that Petitioner was involved in the fight satisfies the some evidence standard, the Magistrate Judge recommends the District Court, after independent review, deny the Habeas Petition.

**Jurisdiction of the Court**

A habeas petition challenging the manner, location or condition of a sentence's execution must be brought pursuant to § 2241 in the custodial court. *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir.2000). A custodian "is the person having a day-to-day control over the prisoner. That person is the only one who can produce 'the body' of the petitioner." *Brittingham v. United* States, 982 F.2d 378, 379 (9th Cir.1992) (internal quotation and citation omitted).

In this case, Petitioner challenges the loss of good time credit without due process or equal protection in a disciplinary hearing. Petitioner is challenging the legality of the manner in which his sentence is being executed. Petitioner was incarcerated in Tucson, Arizona, within the jurisdiction of the Arizona District Court, when he filed the Habeas Petition. *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir.1990) ("jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." (internal citation omitted)). Thus, this Court has jurisdiction over the matter.

**Exhaustion of Administrative Remedies**

Federal prisoners must generally exhaust administrative remedies prior to filing a habeas corpus petition pursuant to 28 U.S.C. § 2241. *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir.1986). Failure to exhaust administrative remedies before bringing a habeas petition under § 2241 may warrant dismissal of the petition. *Id*. The Federal Bureau of Prisons (BOP) establishes administrative remedy procedures that an inmate in federal prison must follow to seek review of any aspect of imprisonment. *Id*.

To appeal a DHO decision, inmates are required to appeal "initially to the Regional Director for the region where the inmate is currently located." 28 C.F.R. § 542.14(d)(2). For most other types of appeals, inmates are required to begin with an informal appeal within their institution. 28 C.F.R. § 542.13. Appeals from DHO decisions are an exception to this general rule. *See* 28 C.F.R. § 542.13(b). An inmate appealing a DHO decision begins with the regional director because "[t]he decision of the DHO is

final and subject to review only by the Regional Director to ensure conformity with the discipline policy and by appeal through the Administrative Remedy program." P.S. 5270.09, § 541.8(i), p. 35, Inmate Discipline Program, Effective August 1, 2011.

In its Answer to the Habeas Petition, the Government asserts Petitioner failed to exhaust his claim that the investigating officer made false statements in the Incident Report and that his equal protection rights were denied when the other inmate was not disciplined. It is difficult for the Court to discern whether these claims were exhausted because the Government did not provide the Court with copies of the administrative remedies. Instead, the Government provided the affidavit of a Senior Attorney for BOP describing Petitioner's administrative remedies and computer printouts of BOP's summary of Petitioner's administrative remedies. (Doc. 12-1, pp. 4-5, 12-27).

The BOP attorney's description of what was contained in an administrative remedy and the computer printouts are not helpful. Petitioner submitted copies of some of his attempts to exhaust administrative remedies attached to his Habeas Petition. (Doc. 1, pp. 19-20, 24-25, 28). These documents appear to exhaust the claims disputed by the Government and in any event, they provide more information than the computer printouts. BOP should have provided copies of the actual administrative remedies filed by Petitioner and copies of the responses given by the Warden, Regional Director and Central Office as applicable. With that said, the exhaustion of these claims does not ultimately matter as the Government concedes Petitioner satisfied exhaustion in filing his third remedy. (Doc. 12, pp. 7-8).

The Government characterizes the third remedy as Petitioner challenging the DHO's finding and loss of good conduct time. Again, copies of this administrative remedy and the BOP's responses were not provided to the Court. In essence, though, in all three of Petitioner's Habeas Petition claims he is challenging the DHO's finding that he engaged in fighting and he is seeking restoration of his lost good time credit. While not eloquently stated, Petitioner's third administrative appeal remedy, challenging his DHO Hearing, included challenges to (1) the accuracy of the evidence used against him

at the DHO Hearing; (2) the denial of his request for photographs of his injuries; and (3) the dismissal of the charges against the other inmate. (Doc. 1, p. 24-25). These are the three grounds Petitioner raises in his Habeas Petition. (Doc. 1, p. 6-7). The Court finds, based on the evidence it was provided, that Petitioner exhausted his administrative remedies for the three grounds asserted in his Habeas Petition. The Court will address those grounds on the merits.

**Due Process Review of the Disciplinary Hearing**

Federal prisoners have a statutory right to good time credits. *See* 18 U.S.C. § 3624. Accordingly, they have a due process interest in the disciplinary proceedings that may take away those credits. *Wolff v. McDonnell,* 418 U.S. 539, 556–557 (1974). "Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action." *Zimmerlee v. Keeney,* 831 F.2d 183, 186 (9th Cir.1987) (citing *Wolff,* 418 U.S. at 563–566). "The inmate has a limited right to call witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals." *Id.* (citing *Wolff,* 418 U.S. at 566.)

Once these *Wolff* procedural protections are followed, the only function of a federal court is to review the statement of evidence upon which the DHO relied in making its findings to determine if the decision is supported by "some evidence." *Superintendent, Mass. Corr. Inst. Walpole v. Hill,* 472 U.S. 445, 455 (1984) ("[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board"). With the some evidence standard, the relevant question for a court to ask is: "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455-456 (internal citations omitted).

Petitioner does not contend and the evidence does not show that Petitioner was denied any of the procedural protections identified in *Wolff*. Petitioner received a copy of the Incident Report. (Doc. 12-2, p. 43). He was also advised of his rights, including the right to call witnesses and present evidence at the DHO hearing. (Doc. 12-2, p. 54).

Although Petitioner's witnesses did not physically appear at the hearing, written statements were obtained from the two witnesses and were considered by the DHO. (Doc. 12-2, pp. 55, 40-41, 56-57). The two witnesses were housed at FCC Petersburg (Low Security) and were not brought to FCC Petersburg (Medium Security) for the hearing due to the significant burden and security risk to the inmates and staff of temporarily moving the witnesses to the other facility. (Doc. 12-2, p. 40). Also, Petitioner was afforded an opportunity to have a staff representative, which he declined. (Doc. 12-2, p. 55). Petitioner was given a copy of the DHO's report. (Doc. 12-2, p. 42). Finally, there is no evidence that DHO Hise was not impartial.

Further, DHO Hise's decision that Petitioner was a participant in the fight is supported by the evidence and exceeds the some evidence standard. DHO Hise relied on a written statement by an inmate witness, written statements by staff, photos of the other inmate's injuries, and medical assessments of both inmates involved. (Doc. 12-2, p. 7). One of Petitioner's own witnesses stated that the other inmate was outside of Petitioner's cell, yelling at him and that the two then started fighting. (Doc. 12-2, p. 56). In addition, the medical examination and photographs of the other inmate showed that he was injured. (Doc. 12-2, pp. 47-48; Doc. 12-2, pp. 51-52). The medical examination of Petitioner on the day of the fight showed only a small superficial abrasion on his left scapular area. (Doc. 12-2, pp. 49-50). Although Petitioner contends that he did not make the admission included in the Incident Report, there is no evidence to support his assertion and no evidence that the investigator falsified the Report in any way.  Additionally, at the DHO Hearing, Petitioner admitted to being in a physical altercation with the other inmate. (Doc. 1, p. 16). All of this evidence supports the DHO's decision that the greater weight of the evidence showed Petitioner engaged in fighting with another inmate.

Petitioner's further allegations that he was injured in the fight and later stabbed by the other inmate and that the Incident Report failed to reflect his injuries are not sustainable arguments. (Doc. 1, pp. 7-8, 20). The evidence shows Petitioner was not credible. Petitioner told the investigating officer that he was with his counselor and not

- 7 -

involved in the incident at all. (Doc. 12-2, pp. 49-50). When he was read a description of the charges during the disciplinary hearing, he told the DHO that he was a victim attacked by the other inmate. (Doc. 12-2, pp. 39-40). Also significant, the medical examination of Petitioner shortly after the fight showed on a superficial abrasion on his left shoulder. (Doc. 12-2, pp. 49-50).

Petitioner's claims that the investigating officer falsified the Incident Report, that exculpatory evidence was ignored and that his due process rights were denied during the disciplinary hearing are without merit. The Magistrate Judge recommends denying these claims.

Petitioner's final claim is that his right to equal protection was denied when the DHO dropped the disciplinary charges against the other inmate but then found Petitioner guilty of fighting. Without deciding whether a claim of equal protection may be brought in a § 2241 habeas petition, the Magistrate Judge finds Petitioner could not prevail on an equal protection claim.

"In our criminal justice system, the Government retains broad discretion as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (internal quotation and citations omitted). The Government's discretion, however, is not unfettered. Claims of selective prosecution are judged according to equal protection standards. *Id*. at 608. A decision to prosecute may not be "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Id*. A petitioner alleging selective prosecution must "show both that the passive enforcement system had a discriminatory effect and that it was motivated by a discriminatory purpose." *Id*.

Petitioner fails to allege either a passive enforcement system with a discriminatory effect or some motivation by prison staff of a discriminatory purpose. The DHO's decision to discipline Petitioner and allegedly not discipline the other inmate is a discretionary decision he was permitted to make. There is no evidence that the DHO made the decision to discipline Petitioner based on an arbitrary classification. In fact, the decision seemed reasonable. At least one witness saw that Petitioner and the other inmate

engaged in a verbal argument that escalated to a physical fight. The other inmate sustained injuries in that fight and medical evidence showed Petitioner sustained only a superficial abrasion. Petitioner also admitted to the fight. Any claim Petitioner may have to allege a violation of equal protection would fail on the merits. The Magistrate Judge recommends this claim be denied.

**Recommendation**

Based on the above, the Magistrate Judge recommends that the District Court DENY the Petition for Writ of Habeas Corpus. (Doc. 1).

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **CV 11-444-TUC-FRZ.**

Dated this 14th day of December, 2012.

_____
CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE